1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10   JULIE M. J.,

11                    Plaintiff,

12        v.

13   COMMISSIONER OF SOCIAL
     SECURITY,

14                    Defendant.

15

CASE NO. 2:21-CV-1491-DWC

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

16        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17   of Plaintiff's applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed.

18   R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before a United

19   States Magistrate Judge.

20                                            BACKGROUND

21        Plaintiff originally filed for disability insurance benefits on September 3, 2010 alleging

22   an onset date of December 31, 2007. Administrative Record (AR) 103-104. At the time of

23   Plaintiff's alleged disability onset she was 36 years old, had a high school education, past

24

1  relevant work as a waitress, hostess, employment interviewer, and receptionist. AR 1563.

2  Plaintiff had also served in the United States Army. *Id*.

3       After departmental denials of Plaintiff's first application, the first hearing before an

4  Administrative Law Judge (ALJ) was held on May 8, 2012 and resulted in an unfavorable

5  decision dated June 6, 2012. AR 17-38. Plaintiff appealed to the United States District Court for

6  the Western District of Washington (this Court), which reversed and remanded for further

7  proceedings. AR 1226-1241.

8       A second hearing was held before an ALJ on December 15, 2015 and resulted in a second

9  unfavorable decision dated May 13, 2016. AR 1246-1277. This time the Appeals Council

10  reversed the ALJ's decision and remanded the case for a third ALJ hearing. AR 1278-1283. A

11  third hearing was held July 10, 2019, which resulted in a third unfavorable decision dated July

12  23, 2019. AR 1071-1095. Plaintiff again appealed to this Court and on May 21, 2020 this Court

13  once again reversed and remanded for further proceedings. AR 3130-3138.

14       A fourth ALJ hearing was held on July 7, 2021, which resulted in yet another unfavorable

15  decision, dated July 22, 2021. AR 3019-3047, 3058-3096. On November 4, 2021, Plaintiff

16  initiated a third appeal to this Court. Dkt. 1. In her Opening Brief she maintains that the ALJ

17  erred by failing to properly evaluate some of her subjective reporting, some of the medical

18  evidence, and the determination by the Department of Veterans Affairs (VA) that she is entitled

19  to VA unemployment benefits. Dkt. 10. The Commissioner maintains the ALJ's decision is

20  supported by substantial evidence and free from legal error. Dkt. 11.

21  ///

22  ///

23  ///

24

1                             <u>THE ALJ's FINDINGS</u>

2        The ALJ found that during the relevant period[1] Plaintiff had the severe impairments of

3 fibromyalgia, obesity, bilateral calcific shoulder tendonitis, mild bilateral median and carpal

4 tunnel syndrome, depressive disorder, anxiety disorder, personality disorder, and post-traumatic

5 stress disorder (PTSD). AR 3025.

6        The ALJ assessed Plaintiff with the residual functional capacity (RFC) to perform

7 sedentary to light work as defined in 20 CFR 404.1567(a)-(b), limited by the need to stand and/or

8 walk at least two hours but less than six hours in an eight-hour day, and the need to sit for two

9 hours but less than six hours in an eight-hour workday, for a total of six to eight hours of sitting,

10 standing, or walking. AR 3029. The ALJ further assessed that Plaintiff could lift 20 pounds

11 occasionally and ten pounds frequently, she could frequently perform bilateral handling,

12 fingering, and reaching in all directions, and she could occasionally crawl, crouch, kneel, stoop,

13 and climb ladders, ropes, scaffolds, ramps, and stairs. *Id*. The ALJ determined that Plaintiff

14 would need to avoid concentrated exposure to hazardous machinery and vibration. *Id*.

15        The ALJ further determined that Plaintiff had the ability to understand, remember, and

16 carry out simple instructions, exercise simple workplace judgment, and perform work that is

17 learned by on-the-job training ranging from a short demonstration up to and including one

18 month. *Id*. The ALJ determined that Plaintiff could respond appropriately to supervision but

19 would not be able to work in close coordination with coworkers in a teamwork setting. *Id*.

20

21

22

23 ──────────────────

24      [1] The relevant period is December 2007 (when Plaintiff alleges she became disabled) through June 2014 (when she was last insured).

1    Finally, the ALJ assessed that Plaintiff could deal with occasional changes in the work

2    environment but could only work in jobs requiring no interaction with the general public, even

3    where the public was present. *Id*.

4                                    STANDARD OF REVIEW

5    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

6    social security benefits if the ALJ's findings are based on legal error or not supported by

7    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

8    Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

9    Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

10   harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11   2008).

12   Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of*

13   *Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as

14   "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and

15   means only—such relevant evidence as a reasonable mind might accept as adequate to support a

16   conclusion." *Id*. (internal quotations omitted).

17                                          DISCUSSION

18   I.     The ALJ provided specific, clear, and convincing evidence for discrediting some of
            Plaintiff's subjective reports.
19

20   Plaintiff's principle objection to the ALJ's denial of her claim is that he found her

21   headaches were not severe and her mental health impairments did not affect her memory,

22   concentration, ability to complete tasks, and ability to get along with others. Dkt. 10 at 11.

23   Before turning to the ALJ's specific discussion of these issues it must be noted that the ALJ

24   found Plaintiff, herself, was an unreliable reporter. The ALJ wrote:

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

**The claimant's activities indicate that the claimant was capable of more than she has alleged.** For example, in January 2009, the claimant was enrolled in school taking 19 credits and working 16-19 hours per week in order to maintain her childcare benefit for her three-year-old son (12F/80). She was going to school to earn a certificate as a medical assistant. She was in her fourth quarter when she stopped in April 2010, but she indicated that she planned to resume in the fall (5F/75). Up to that point, she denied that change in mood had significantly interfered with her "very good performance" in her classes or her progression toward her degree (5F/91). At the time she stopped school, she explained to her therapist that this was because her "graveyard shift" threw off her sleeping schedule, and she started sleeping through her classes (5F/85). She quit her job as a hostess to preserve her grades in school and then temporarily withdrew from school due to feeling overwhelmed. It does not appear that the claimant returned to school, but she attributed this to lack of finances, rather than psychological barriers (16F/12, 71). Later, she attributed her failure to complete the remaining three classes in her program to her inability to type due to carpal tunnel syndrome (14F/15). **The claimant returned to her studies after the date last insured, but she reported that she stopped short of completing them because (she believed) she would be "kicked off" her VA benefits if she finished professional schooling** (31E/12). While it does not appear that the claimant was able to maintain her schooling and work schedule at the same time for very long during the relevant period, her ability to sustain both for several months at a time and do one or the other suggests that she was not markedly limited in either her mental or her physical capacities. Without the sleep deprivation of her night shift or a reported carpal tunnel exacerbation, her reports indicate that she could have completed her schooling. **This suggests that she had sufficient memory, understanding, and concentration to sustain multiple college level courses at a time. Her reports do not reflect social difficulties with attending these classes. Meanwhile, she performed work as a restaurant hostess, which would have been at least at the light level and would have required interacting with coworkers and the public, and she reported stopping because she needed to focus on her studies.**

17

AR 3037-3038 (emphasis added). The ALJ further stated:

18

19

20

Evidence in the record also suggests an issue of **secondary gain**. The claimant's long-standing therapist noted that the claimant eschewed treatment goals, including coping skills and self [-]improvement goals, in favor of working to obtain 100-percent service-connected disability and unemployability through the VA (14F/13). In July 2014, the claimant requested a **new counseling referral "so that I can get the counseling I need for my service-connected PTSD"** (18F/85).

21

22

23

24

In 2019, the claimant testified that **she received $3,174 in benefits from the VA per month for having been found "unemployable."** She acknowledged that she **did not have to pay tax on that income** and received other benefits such as **free car tags and medical coverage**, and that **she would lose the benefits for unemployability if she went to work.** She also acknowledged that she did not

1  complete her coursework to become a medical assistant, stopping a quarter short of
2  completion, because she believed she would be "kicked off" her disability
   payments if she completed it (31E/9-12). The undersigned notes that her **monthly
3  benefit from the VA far exceeds any average monthly income in her work
   history since the 1990s** (see 34D).

4  AR 3039 (emphasis added).

5      Plaintiff does not dispute that the ALJ's above rejection of her subjective reporting is

6  legally sufficient.[2] A reviewing court "will not consider any claims that were not actually argued

7  in [a plaintiff's] opening brief." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30

8  (9th Cir. 2003)(citing *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)).

9  Therefore, the Court turns to Plaintiff's two impairment-specific arguments mindful that the

10 ALJ's rejection of Plaintiff's subjective testimony was legally sound, and that fact permeated the

11 ALJ's assessment of all other evidence that credited Plaintiff's self-reports.

12      A.  Headaches

13     First, Plaintiff argues that the ALJ wrongly determined at step two of the sequential

14 analysis that headaches were not among her severe impairments, then failed to include Plaintiff's

15 alleged limitations caused by headaches in her RFC. Dkt. 10 at 4. The ALJ stated:

16     The claimant has alleged that migraines are one of her debilitating conditions. The
       record contains a diagnosis of migraines, and treatment notes reflect allergies or
17     sensitivity to some medications typically used to treat migraines, such as
       sumatriptan and nortriptyline (see 1F/1). The claimant has alleged that she has
18     migraines ranging from one a week to one a month and that they can last for days.
       **The medical record does reflect some intermittent treatment for migraines**
19     (see, e.g., 5F/61, 80, 101). Her headache complaints were sometimes in the setting
       of concurrent sinus symptoms (see, e.g., 5F/25, 80). **However, the record does not
20     document the alleged frequency, severity, or intractability of her migraines.**
       For instance, she tolerated an injection of ketorolac tromethamine well (14F/45).

21

22     _____

23     [2] To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the
       disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what
       testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d
24     915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for
       rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 6

1

2

3

4

> The undersigned does not find that migraines were a severe impairment causing more than minimal interference in the claimant's ability to perform work activities. **Nevertheless, headaches, along with other chronic pain, have been considered in the assessment of her residual functional capacity and are accommodated with such limitations as sedentary to light exertion and avoidance of concentrated exposure to vibration and hazards.**

AR 3025 (emphasis added).

The ALJ further noted that Plaintiff's pain issues in general appeared to be linked to "life stressors", and that "positive situations and management of stressors had a reverse effect on symptoms." AR 3036. He identified a pattern in Plaintiff's record of exacerbated mental symptoms aligned with situational stressors that were reduced when these stressors were reduced, "indicat[ing] that such transient worsening did not stem entirely from her underlying disease process and that the waxing and waning of the claimant's symptoms was due less to lability or uncontrolled anxiety than to life circumstances." AR 3037.

According to Plaintiff, the record belies these findings. Dkt. 10 at 4-5. She points to several instances in the record documenting complaints of headaches, many of which are outside the relevant period. *Id.* at 5-6. Nevertheless, the Court has reviewed the records Plaintiff relies upon that fall between her alleged onset date of December 31, 2007 and her date-last-insured in June 2014, and finds that many of them simply reflect Plaintiff's self-reporting of a history of migraines (AR 749, 469, 412, 516, 1003, 989, 2126, 1672, 1824).

The records documenting treatment for an active migraine are few and far between, with only one date in 2009 (AR 712), one date in 2010 (AR 432), three dates in 2011 (AR 579, 989, 1011, 958) and one date in 2013 (1794). These records are consistent with the ALJ's finding that the evidence reflects intermittent treatment for migraines but does not document the alleged frequency, severity, or intractability she claims. AR 3025. Coupled with the undisputed finding that Plaintiff's activities during the relevant period were inconsistent with her subjective

1   symptom reporting and Plaintiff has exhibited secondary gain motivations, the Court finds the

2   ALJ provided specific, cogent reasons to disbelieve Plaintiff's reports about the degree to which

3   headaches impacted her ability to work during the relevant period. *See Lester*, 81 F.3d at 834.

4      B.  Mental Impairment

5         Next, Plaintiff contends the ALJ wrongly rejected her testimony that her "mental

6   symptoms" prevent her from working. Dkt. 10 at 10.

7         Regarding Plaintiff's mental health symptoms the ALJ stated:

8         In *understanding, remembering, or applying information,* the claimant had a mild
          limitation. In a mental status examination in January 2011, she demonstrated
9         **"grossly normal responses,"** according to the examiner. She could repeat digits
          backward up to four and make correct change. She could recall only one of three
10        objects clearly and two approximately after three minutes, and in a second trial she
          could remember two of three objects clearly and a third approximately after six
11        minutes. **The examiner found that she did not appear to have any impairment
          in her capacity to reason, understand, or remember** (7F/2-3). Her providers
12        found her thought processes generally organized and logical (see, e.g., 5F/33, 42,
          54, 65, 96, 105, 107; 7F; 12F/44, 62, 85, 96; 14F/6, 12, 40, 70, 94, 102; 16F/9) and
13        her judgment and insight to be intact (see, e.g., 12F/44, 62, 68, 96; 16F/16, 40, 45,
          51, 59, 70, 98). **Her providers did not make objective findings of memory
14        deficits.** Although she had complaints of fatigue, she usually presented alert and
          fully oriented (see, e.g., 1F/3; 5F/73, 85, 96; 6F; 7F; 9F/35; 12F/44, 62, 85, 96,
15        108).

16        In *interacting with others*, the claimant had a moderate limitation. Dr. Sandvik, a
          consultative psychiatric examiner, noted that the claimant appeared not to have
17        good interpersonal skills and acknowledged having problems with anger and a
          history of difficulty relating to groups. **However, she denied ever becoming
18        assaultive or breaking things in anger** and stated that being alone calmed her.
          **She also endorsed having learned from therapy "not to react" to situations
19        that made her angry** (7F). In some office visits, the claimant showed depressive,
          anxious, labile, or irritable affect (see, e.g., see, e.g., 5F/70, 73, 85; 16F/64), **but
20        more often she presented with normal, appropriate, or "euthymic"
          mood/affect** (see, e.g., 5F/32, 35, 42, 50, 54, 59, 65, 68, 74, 91, 97, 105; 12F/44,
21        96; 14F/6, 8, 12, 70, 72, 76; 16F/12, 44, 70, 116). Although she presented with
          rapid speech from time to time, **she remained organized and logical** (see, e.g.,
22        12F/90; 14F/72; 16F/9), and **usually her speech was normal in rate, tone, and
          volume** (see, e.g., 5F/32, 42, 51, 65, 70, 73, 88, 96, 107; 7F; 12F/44, 62, 85; 14F/5,
23        16, 40, 70, 83, 102). **Providers noted normal eye contact** (see, e.g., 12F/85;

24

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 8

16F/16, 40, 70, 98) **and cooperative behavior** (see, e.g.,12F/44, 62, 85; 14F/50; 16F/70, 98, 147).

With regard to *concentrating, persisting, or maintaining pace*, the claimant had a mild limitation. In a mental status examination in January 2011, **she demonstrated "grossly normal responses," subtracting serial sevens accurately, repeating digits backward up to four, and presenting her responses coherently and relevantly** without being circumstantial or tangential (7F/2). As noted above, she **generally presented with organized, logical thought processes. She generally presented without fidgeting or restlessness** (see, e.g., 5F/32, 35, 42, 51, 59, 65, 91; 9F/118; 14F/45; 16F/9). **Providers also noted normal attentiveness** (see, e.g., 12F/96; 16F/16, 40, 58).

AR 3028 (emphasis added). Thus, the ALJ concluded that "Despite her symptoms … the medical evidence is not consistent with allegations indicating incapacity due to mental [health issues]." AR 3034.

Plaintiff argues the ALJ erred by "cherry picking" examples of temporary relief that actually only reflect "the waxing and waning" nature of mental health conditions. Dkt. 10 at 10. Plaintiff directs the Court to the opinion of Jennifer Palermo, Ph.D. (Palermo) who examined Plaintiff and reviewed her VA records. Dkt. 10 at 11; AR 2731.

As the Court finds, infra, that the ALJ's treatment of Palermo's opinion was legally sufficient, the Court commences to the next argument.

II.   The ALJ provided legally sufficient reasons to find the opinions of David Sandvik M.D. and Jennifer A. Palermo, Ph.D. only partially reliable.

Plaintiff was seen by examining physician David Sandvik, M.D. at the request of the Social Security Administration, and by examining psychologist Jennifer A. Palermo, Ph.D. at the request of the VA. According to Plaintiff the ALJ erred when he discredited their opinions.

A.   David Sandvik, M.D.

David Sandvik, M.D. (Sandvik) performed a consultative evaluation of Plaintiff on January 7, 2011. AR 500-02. The ALJ summarized Sandvik's evaluation, beginning by stating:

1

2     In a consultative psychiatric evaluation with Dr. Sandvik in January 2011, the
      claimant presented fairly well groomed with **normal to mildly depressed mood.
3     She was attentive and spoke coherently and relevantly, and her presentation
      was incongruent with her complaints, which the examiner noted to be
      "somewhat dramatic."** The **cognitive examination was grossly normal**,
      including abilities to follow a three-step command, perform accurate serial-seven
4     calculations, make change, repeat up to four digits in reverse, and recall two of
      three objects after six minutes. Dr. Sandvik noted unimpaired ability to reason,
5     understand, and remember. The claimant did not appear to have good interpersonal
      skills, but she was cooperative in the exam (7F).

6     AR 3035 (emphasis added).

7

8     The state agency psychological findings and **Dr. Sandvik's opinion are given
      some weight**. They are supported by a summary of evidence and Dr. Sandvik's
      evaluation narrative and findings. **Dr. Sandvik noted that the claimant reported
9     anger problems and appeared not to have good interpersonal skills, but she
      maintained normal to slightly depressed affect during the exam**, reported that
10    being alone could calm her, and denied ever becoming assaultive or breaking things
      in anger. She also endorsed having learned from therapy "not to react" to situations
11    that made her angry (7F). The state agency findings and Dr. Sandvik's opinion are
      largely consistent with the longitudinal evidence. For instance, the claimant had
12    normal cognitive findings, as well as generally appropriate interactions with
      providers and a usual lack of acute distress, alongside reports of irritability, anger,
13    and anxiety with situational stressors. **However, the state agency findings and
      Dr. Sandvik's opinion are vague as to the claimant's workplace interactive
14    limitations, and they do not appear to adequately consider the stress and
      adaptive demands of detailed or complex work tasks, particularly in light of
15    the claimant's reported history of anxiety over work performance demands
      and notes reflecting reactivity to stressors.** The undersigned finds that the
16    evidence overall supports further limitation in the complexity of her work tasks and
      more specific limitations in the claimant's interactions, as described in the finding
17    above.

18    AR 3042 (emphasis added)

19          Plaintiff argues the ALJ committed harmful error by failing to clarify what he identified

20    as "vagueness" in Sandvik's opinion, as he is required to do under *Smolen v. Chater*, 80 F.3d

21    1273, 1279 (9th Cir. 1983), and because discounting Sandvik for failing to consider the demands

22

23

24

1  of detailed and complex work tasks is not a specific and legitimate reason[3] to reject his opinion.

2  Dkt. 10 at 13.

3      The Court concurs with the Commissioner that Plaintiff's arguments are premised upon a

4  misreading of the ALJ's analysis. *See* Dkt. 11 at 10. First, an ALJ's finding that a doctor's

5  conclusions about a Plaintiff are vague (i.e., Sandvik stating Plaintiff has "some difficulty" with

6  social interactions) is not tantamount to a finding that the record is inadequate to allow for proper

7  evaluation of the evidence. Though Plaintiff is correct that an inadequate record triggers the

8  ALJ's duty to further develop it further, that is not what the ALJ encountered in this case

9  involving a record in excess of 3000 pages. *See* Dkt. 8; *see also Tonapetyan v. Halter*, 242 F.3d

10  1144, 1150 (9th Cir. 2001)(ALJ's duty to fully and fairly develop the record may be discharged

11  "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the

12  claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

13  allow supplementation of the record.")(internal citations omitted).

14      Second, the ALJ concluded that Sandvik's vague limitations assessment did not provide

15  much insight into her specific functional limitations, and therefore gave Plaintiff the benefit of

16  the doubt regarding the limits on the complexity of work she remains capable of performing,

17  limiting her residual functional capacity to simple work. AR 3029, 3042. The ALJ also

18  accounted for Plaintiff's issues with social interaction by finding she could not work closely with

19  coworkers in a teamwork setting and could have no public interaction. AR 3029. Thus, to the

20  extent the ALJ discounted Sandvik's opinion the result actually benefited Plaintiff because the

21  ALJ found her to be more limited than did Sandvik.

22

23      [3] Plaintiff applied for disability benefits before March 27, 2017, so the medical evidence rules in 20 C.F.R.
§ 404.1527 apply to her claim rather than the revised regulations that apply to claims filed on or after March 27,
24  2017. *See* 20 C.F.R. § 404.1520c.

1    B.  <u>Jennifer Palermo, Ph.D.</u>

2        Plaintiff also contends the ALJ harmfully erred by failing to fully credit the opinion of

3    Jennifer Palermo, Ph.D. (Palermo) who examined Plaintiff in March 2016 and completed a

4    disability benefits questionnaire in conjunction with Plaintiff's VA disability benefits

5    application. AR 2730-2739.

6        The ALJ stated the following regarding Palermo's report:

7        Dr. Palermo opined that the claimant met the criteria for PTSD and checked boxes
         on the VA form indicating that the claimant had difficulty adapting to stressful

8        circumstances, including work or a work-like setting, and inability to establish and
         maintain effective relationships. Dr. Palermo also marked boxes indicating that the

9        claimant's symptoms caused clinically significant distress or impairment in social,
         occupational, or other important areas of functioning, and that she had occupational

10       and social impairment with reduced reliability and productivity (34F/3, 8-9).
         **The undersigned gives this opinion little weight.** First, the opinion is **vague** as to

11       the degree of occupational and social impairment and articulates **no specific
         workplace limitations**, such as inability to work with the public or perform

12       detailed tasks. "Clinically significant" is **undefined and does not necessarily
         equate to "marked impairment" of vocational capacity**. Notably, the focus of

13       this examination was to determine if the claimant had impairment of social and
         occupational functioning and **whether that impairment was service-connected—**

14       **a criterion that is not relevant to the Social Security disability analysis.**

15       Second, the opinion and the underlying **examination in February 2016 came
         more than a year and a half after the date last insured.** Dr. Palermo did review

16       earlier records, some of them back in the 1990s (see 34F/5), but **she did not
         articulate specific evidence or reasons from those records to support her**

17       **opinion that the claimant would have "occupational and social impairment
         with reduced reliability and productivity."** Meanwhile, the claimant was noted

18       to present her historical and symptom severity "in a somewhat dramatic manner,"
         and the mental status examination was otherwise mostly normal. She persistently

19       clicked her pen during the evaluation **but otherwise presented with euthymic
         mood and affect, normal eye contact, logical thought process, normal ability**

20       **to track the conversation, full orientation, normal performance in memory
         and concentration tasks, and ability to abstract.** She arrived on time with

21       appropriate dress and grooming (34F/9-10). The exam findings do not support
         significant problems with reliability (i.e., attendance or working within a schedule),

22       communicating effectively in a work setting, attending to or focusing on tasks,
         remembering or following instructions, or interacting appropriately with others in

23       a setting without demand for teamwork.

24

Third, while the claimant's reported symptoms in the exam would provide some support for Dr. Palermo's opinion, the severity and limiting effects of these symptoms are undercut by Dr. Palermo's observation that the claimant was **"somewhat dramatic" in her presentation— suggesting symptom magnification. This observation is consistent with other evidence in the record of symptom magnification and secondary gain focus, discussed above under "Other Factors."**

Finally, the claimant's subjective report and Dr. Palermo's opinion (insofar as it suggests marked limitations) are not entirely consistent with the evidence as a whole. For instance, contemporary and later medical records reflect little treatment for mental health concerns until the claimant encountered increasing stressors with the deterioration of her mother's mental health in 2021, resulting in the claimant having care duties (see 47F/42, 51, 62). The claimant engaged briefly in cognitive behavioral therapy and psychiatry in 2018, presenting with generally unremarkable mental status (see 46F/1, 4, 11, 16, 20, 24), **but otherwise her treatment after the date last insured reflected mostly physical or dental concerns** (see generally 40F; 41F; 42F; 43F; 44F; 46F; 48F/46-47). As for the relevant period, the evidence is consistent with some level of social and occupational impairment, but not to a marked degree. The claimant had mental health treatment and complaints of anger, irritability, anxiety, and depressed mood, **but much of the focus in treatment was on managing situational stressors**, and the objective mental status findings were largely benign. She was often able to show normal mood and affect, and even with visible anxiety, low mood, or irritability, the claimant presented as organized and logical, with generally normal thought content, alertness, and full orientation. **She had positive response to counseling and medications, adapted to her stressors over time, and engaged in work, school, and other activities indicating less social and cognitive impairment than alleged.** The evidence supports finding her limited, but the undersigned has accounted for her limitations in the residual functional capacity finding above.

AR 3042-3043 (emphasis added).

When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

1   Plaintiff is certainly correct that the ALJ must not "cherry-pick" instances of no or low

2   symptomology without considering the context, such as instances of high symptomology. *See*

3   *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain

4   observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th

5   Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the Court "cannot affirm

6   … 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record

7   as a whole, weighing both evidence that supports and evidence that detracts').

8   Nevertheless, the Court does not concur with Plaintiff that the ALJ committed this error.

9   To the contrary, the Court finds Plaintiff's invitation to focus on records that support Palermo's

10  diagnosis the very definition of prohibited cherry-picking. Dkt. 10 at 11 (citing AR 1017, 1664,

11  1676, 1675, 1671, 1607, 1731, 1723, 1721, 2077, 2164). The Court declines, as doing so is

12  incongruous with the intent of the Social Security Act. *See e.g.*, *White v. Comm'r Soc. Sec.*, 572

13  F.3d 272, 285 (6th Cir. 2009) ("The problem with [plaintiff's] cherry picking argument, however

14  is that it cuts both ways. She too cherry picks data.").

15  Instead, the Court finds that the ALJ provided more than specific and legitimate reasons

16  to discount Palermo: (1) her opinion was formulated almost two years after Plaintiff's date-last-

17  insured, (2) it was based in-part on records pre-dating and post-dating the relevant period, (3) it

18  did not clarify which records supported what alleged limitations, (4) it noted that Plaintiff's

19  presentation was "somewhat" dramatic, and (5) it was conducted for the purpose of determining

20  if Plaintiff had a VA "service conducted" impairment, not to determine whether she was disabled

21  within the meaning of the Social Security Act. Therefore, the Court finds the ALJ's treatment of

22  Palermo's opinion was legally sufficient.

23

24

III.    The ALJ did not err in his consideration of the VA's determination that Plaintiff was unemployable effective June 18, 2010.

In April 2016 the VA determined Plaintiff was entitled to unemployment benefits, effective June 18, 2010. The ALJ took note of this determination, stating:

> The claimant is a U.S. Army veteran who served in 1994 and 1995 (21E). She began receiving VA service compensation payments in June 2005 as a veteran with three dependents, based on service-connected left shoulder bursitis (30%), right hip bursitis (10%), and lumbar strain (20%) (2F/2-3). Beginning in September 2011, she received benefits as a veteran with two dependents, based on service-connected PTSD (70%), right hip bursitis (10%), migraine headaches (50%), left shoulder bursitis (30%) and lumbar strain (20%) (17E/1-2; 15F). She was initially denied entitlement to the 100% rate (individual unemployability) because it was not shown that she was unable to work because of service-connected disability (17E/3). In April 2016, she was granted individual unemployability effective June 18, 2010 (21E/2).

AR 3043-3044. Nevertheless, the ALJ gave little weight to the VA's determination because "there is no reference to specific work activities, functional limitations, signs, symptoms, findings or impairments", and because "the voluminous VA records submitted by the claimant do not support greater limitations than already found within the above residual functional capacity." *Id*.

The Ninth Circuit requires the ALJ to ordinarily give "great weight" to a VA disability determination due to the similarity between the VA's and Social Security Administration's (SSA) programs, however, "because the VA and SSA criteria for determining disability are not identical … the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)(citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).

Plaintiff argues the ALJ failed to give this determination its due credit because the VA's process is "akin to determining the veteran's residual functional capacity in the Social Security

1  process, and then determining if there is a substantially gainful occupation available given the

2  physical and mental limitations imposed by service-connected disabilities." Dkt. 10 at 16.

3        Plaintiff is incorrect. The ALJ specifically found that the VA "does not assess a residual

4  functional capacity and submit that capacity to a vocational expert to determine the availability

5  of occupations" and that the percentages of disability the VA assigns to a claimant's impairments

6  "do not refer to any symptoms, signs, findings" and do not correlate with the Social Security

7  Administration's criteria for determining disability. AR 3043-3044. The Court finds these to be

8  persuasive, specific, valid reasons to not give the VA's disability determination great weight in

9  this particular case.

10   IV.   <u>The ALJ did not err in his step five determination.</u>

11        Plaintiff's final argument—that the ALJ's residual functional capacity analysis and step

12  five finding that Plaintiff remains capable of performing other work are erroneous—assumes her

13  above rejected arguments were victorious. Dkt. 10 at 17. Having determined, instead, that all of

14  Plaintiff's arguments lack merit the Court need not address this one.

15                              <u>CONCLUSION</u>

16        In conclusion, this Court finds the ALJ's determination that Plaintiff was not disabled is

17  supported by substantial evidence and free of harmful legal error. Accordingly, the

18  Commissioner's final decision is affirmed.

19

20        Dated this 2nd day of May, 2022.

21

22                                   David W. Christel
                                     United States Magistrate Judge

23

24